

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00241-CR

———————————————

RONNIE PATRICK SCHINDLER, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 5
Tarrant County, Texas
Trial Court No. 1457109

Before Meier and Birdwell, JJ.; and Rebecca Simmons, J. (Sitting by Assignment).
Memorandum Opinion by Justice Simmons

## MEMORANDUM OPINION

Appellant Ronnie Patrick Schindler appeals his conviction for assault bodily injury of a family member enhanced with a prior conviction for assault bodily injury of a family member.[1] In three issues, Appellant contends the trial court erred in admitting out-of-court statements by his wife, (hereinafter referred to as "LE") who did not testify at trial, in violation of Appellant's Sixth Amendment right of confrontation. This appeal focuses on the trial court's determination, pursuant to article 38.49 of the Texas Code of Criminal Procedure, that Appellant forfeited his right of confrontation by wrongfully preventing LE from testifying at trial. For the reasons set forth below, we affirm the judgment of the trial court.

## Background

### A. The Domestic Violence Incident

On May 21, 2016, Appellant, LE, and their children were returning from dinner at a relative's house. The couple had each consumed alcoholic drinks, and LE later told police officers that Appellant was drunk and driving over 110 miles an hour with the children in the car. Upon arriving at their residence, Appellant went to lie on the couch while LE went to their son's room. Appellant threw up on the floor and LE brought him a trash can. Appellant threw the trash can at LE. A neighbor heard

---

[1] *See* Tex. Penal Code Ann. § 22.01(a), (b) (West Supp. 2017); *see also* Tex. Code Crim. Proc. Ann. art. 42.013 (West 2018); Tex. Fam. Code Ann. § 71.003 (West 2014), § 71.004 (West Supp. 2017); Tex. Gov't Code Ann. § 573.024(a) (West 2012).

yelling and called 911. When the police arrived, LE and the children were outside and upset. LE accused Appellant of pushing her against furniture and injuring her. The police looked at the scene of the altercation and talked with the parties. The officers took a written statement from LE accusing Appellant of hitting her with a small rock and pushing her against furniture resulting in pain and scratches on her arms. According to Officer Ramirez, Appellant was loud, belligerent, and uncooperative with the police and had an odor of alcohol coming from his breath. In Officer Ramirez's opinion, Appellant was intoxicated.

Officer Ramirez arrested Appellant and took him to jail before returning to the residence. Officer Ramirez then spoke to the children and photographed the home, the broken furniture, and LE's injuries. Officer Ramirez completed a family violence packet with LE who indicated the following on a pre-printed form that was read to the jury at trial:

- Appellant had been violent towards her in the past.

- Appellant had access to firearms or weapons.

- Appellant had threatened to kill her.

- Appellant had threatened to kill himself or someone else.

- Appellant had attempted suicide.

- Things had recently gotten worse, more frequent, or more severe.

- Appellant had been abusive when drinking or using drugs.

3

- Appellant had been violent in front of others or in public.

- Appellant had put his hands or objects around her neck and squeezed.

- Appellant had been violent towards children.

- Appellant had few friends and seemed emotionally dependent on her.

- Appellant seemed unusually jealous, possessive, or to consider her his property.

- Appellant had been violent when she had left or talked about leaving him.

- The police had been called regarding violence between her and Appellant.

- Appellant had recently lost his job or had trouble keeping a job.

### B. Failure to Serve Subpoena on LE

On March 21, 2017, Tarrant County District Attorney's Office Investigator Lester Couch attempted to serve LE with a subpoena for her appearance at trial.[2] He failed to serve her, and LE did not appear at trial. Anticipating the absence of LE from trial, the prosecutor filed a motion under article 38.49 of the Code of Criminal Procedure seeking the trial court's permission to introduce the oral and written statements of LE at trial.[3] The trial court held a hearing on March 29, 2017, in accordance with article 38.49 and determined that LE's oral and written statements

[2]Trial was originally scheduled for March 21, 2017, but was rescheduled to July 27, 2017.

[3]Article 38.49 codifies the doctrine of forfeiture by wrongdoing whereby a person who wrongfully procures the unavailability of a witness may not deprive the trier of fact of relevant evidence and testimony.

4

would be admissible at trial. Because the focus of this appeal is the trial court's finding of forfeiture by wrongdoing, we will discuss the facts underlying the trial court's ruling in detail below.

After reviewing the evidence, the trial court ruled that the State had met its burden of proof by a preponderance of the evidence under Article 38.49. Consequently, the trial court ruled the State could introduce into evidence LE's statements to the police at trial. No findings of fact were requested. At trial, LE's Voluntary Statement was admitted into evidence and Officer Ramirez testified concerning their conversations with LE. The jury returned a guilty verdict.

## ARGUMENT AND AUTHORITIES

### A. Texas Code of Criminal Procedure Article 38.49

Article 38.49 governs the disposition of this appeal. Thus, a discussion of the statute and the doctrine underlying it is warranted. In a criminal prosecution, a defendant has a Sixth Amendment right to be confronted with the witnesses against him. *Giles v. California*, 554 U.S. 353, 357–58, 128 S. Ct. 2678, 2682 (2008) (citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004)); *Davis v. Washington*, 547 U.S. 813, 833, 126 S. Ct. 2266, 2280 (2006) (reasoning that "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation"); *Gonzalez v. State*, 195 S.W.3d 114, 116 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1024 (2006). Even if a hearsay statement offered against the defendant may be otherwise admissible under the rules of evidence, the Confrontation Clause may be

implicated if the defendant has not had the opportunity to confront the out-of-court declarant. *Gonzalez*, 195 S.W.3d at 116; *see Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374. The United States Supreme Court has long recognized that certain testimonial hearsay statements may be admitted even though the defendant has no opportunity to confront the declarant. *Giles*, 554 U.S. at 358, 128 S. Ct. at 2682. Declarations made by a declarant whose unavailability the defendant procured are one such exception. *Id.* at 359, 128 S. Ct. at 2683. This exception is referred to as the doctrine of forfeiture by wrongdoing.

Under forfeiture by wrongdoing, the defendant is barred from asserting his right of confrontation when he has wrongfully procured the unavailability of the witness. *See id.* at 359–62, 128 S. Ct. at 2683–84; *Gonzalez*, 195 S.W.3d at 118–19. Under *Giles*, this exception applies only "when the defendant engaged in conduct *designed* to prevent the witness from testifying." *Giles*, 554 U.S. at 359, 128 S. Ct. at 2683. Further, there must be some showing by the proponent of the statement that the defendant intended to prevent the witness from testifying. *Id.* at 361–62, 128 S. Ct. at 2684–85. However, forfeiture by wrongdoing applies even when the defendant has multiple reasons for harming the witness, as long as one of the reasons is to prevent the witness from testifying. *United States v. Jackson*, 706 F.3d 264, 269 (4th Cir.), *cert. denied*, 569 U.S. 1024 (2013); *United States v. Martinez*, 476 F.3d 961, 966 (D.C. Cir.), *cert. denied*, 552 U.S. 968 (2007); *United States v. Houlihan*, 92 F.3d 1271, 1279 (1st Cir. 1996), *cert. denied*, 519 U.S. 1118 (1997). Forfeiture by wrongdoing may apply "even though

6

the act with which the accused is charged is the same as the one by which he allegedly rendered the witness unavailable." *Gonzalez*, 195 S.W.3d at 125; *see also Giles*, 554 U.S. at 374 n.6, 377, 128 S. Ct. at 2691 n.6.

Article 38.49 is a codification of the forfeiture by wrongdoing doctrine, and its requirements substantially correspond to those set out in *Giles*. *Shepherd v. State*, 489 S.W.3d 559, 574 (Tex. App.—Texarkana 2016, pet. ref'd) (providing that the "requirements of Article 38.49 substantially correspond with the requirements for forfeiture by wrongdoing set out in *Giles*"). Article 38.49 provides:

> (a) A party to a criminal case who wrongfully procures the unavailability of a witness or prospective witness:
>
> > (1) may not benefit from the wrongdoing by depriving the trier of fact of relevant evidence and testimony; and
> >
> > (2) forfeits the party's right to object to the admissibility of evidence or statements based on the unavailability of the witness as provided by this article through forfeiture by wrongdoing.
>
> (b) Evidence and statements related to a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of a witness or prospective witness are admissible and may be used by the offering party to make a showing of forfeiture by wrongdoing under this article, subject to Subsection (c).
>
> (c) In determining the admissibility of the evidence or statements described by Subsection (b), the court shall determine, out of the presence of the jury, whether forfeiture by wrongdoing occurred by a preponderance of the evidence. If practicable, the court shall make the determination under this subsection before trial using the procedures under Article 28.01 of this code and Rule 104, Texas Rules of Evidence.
>
> (d) The party offering the evidence or statements described by Subsection (b) is not required to show that:

7

> (1) the actor's sole intent was to wrongfully cause the witness's or prospective witness's unavailability;
>
> (2) the actions of the actor constituted a criminal offense; or
>
> (3) any statements offered are reliable.

Tex. Code Crim. Proc. Ann. art. 38.49 (West 2018).

We next address the appropriate standard of proof under article 38.49, before reviewing the sufficiency of the evidence supporting the court's ruling. We conclude with a review of the constitutionality of article 38.49.

## B. Issue 2: Standard of Proof for Forfeiture by Wrongdoing

In his second issue, Appellant complains that the trial court used the wrong standard of proof by finding forfeiture by wrongdoing by a preponderance of the evidence instead of beyond a reasonable doubt. We disagree. Article 38.49 requires the trial court to make a determination, outside the presence of the jury, "whether forfeiture by wrongdoing occurred by a **preponderance of the evidence**." *Id.* art. 38.49(c) (emphasis added).

Although the Supreme Court has upheld the constitutionality of the forfeiture by wrongdoing doctrine, it has not determined the standard of proof required to demonstrate the forfeiture. In *Davis*, the Supreme Court noted, "federal courts using Federal Rule of Evidence 804(b)(6), which codifies the forfeiture doctrine, have generally held the Government to the preponderance-of-the-evidence standard, *see,*

*e.g.*, *United States v. Scott*, 284 F.3d 758, 762 [(7th Cir. 2002)]. State courts tend to follow the same practice . . . ." *Davis*, 547 U.S. at 833, 126 S. Ct. at 2280.

Relying on Section 2.01 of the Texas Penal Code, Appellant argues that no one can be convicted of a crime unless each element is proved beyond a reasonable doubt. He points out that the Due Process Clause of the Fourteenth Amendment requires this standard for criminal convictions in both state as well as federal proceedings.[4] We disagree that forfeiture by wrongdoing is an element of assault bodily injury of a family member with which Appellant was charged.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Miles v. State*, 357 S.W.3d 629, 631 (Tex. Crim. App. 2011). This standard does not apply to admission of evidence. Rather than being an element of Appellant's criminal offense, article 38.49 describes a procedure for determining the admissibility of certain testimonial evidence. Appellant directs us to no cases in Texas or the federal system that support

---

[4]Appellant does not argue that the Confrontation Clause requires a higher standard of proof. *See United States v. Nelson*, 242 Fed. App'x 164, 171 n.2 (5th Cir. 2007), *cert. denied*, 552 U.S. 1154 (2008); *see also Davis*, 547 U.S. at 833, 126 S. Ct. at 2280, (distinguishing between forfeiture on evidentiary and constitutional grounds, and taking "no position on the standards necessary to demonstrate such forfeiture" when constitutional concerns exist).

9

his argument that a higher standard of proof is required under section 2.01 of the Code of Criminal Procedure.

Preliminary evidentiary decisions regarding admissibility determinations that hinge on factual questions are often decided by a reduced standard of proof. The United States Supreme Court has traditionally required that these matters be established by a preponderance of proof. *Bourjaily v. United States*, 483 U.S. 171, 176, 107 S. Ct. 2775, 2779 (1987) (admissibility of a co-conspirator's statement is determined by a preponderance of the evidence). "Thus, the evidentiary standard is unrelated to the burden of proof on the substantive issues, be it a criminal case, *see In re Winship*, 397 U.S. 358, 90 S. Ct. 1068 . . . [(1970)], or a civil case." *Bourjaily,* 483 U.S. at 175, 107 S. Ct. at 2778. We see no reason to depart from the standard set forth in article 38.49 and overrule Appellant's second issue.

## C. Issue 1: Sufficiency of the Evidence Supporting Forfeiture

Appellant contends in his first issue that there was insufficient evidence as a matter of law and that the trial court abused its discretion by determining he prevented service of a subpoena on LE, thereby forfeiting his right to confrontation by wrongdoing. Having determined that the standard of proof under article 38.49 is preponderance of the evidence, we review the evidence to determine whether the trial court abused its discretion in making its determination.

### 1. *Standard of Review*

The forfeiture by wrongdoing doctrine relates to the admission of otherwise objectionable hearsay evidence. We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Kirk v. State*, 421 S.W.3d 772, 781 (Tex. App.—Fort Worth 2014, pet. ref'd); *Davis v. State*, 268 S.W.3d 683, 703 (Tex. App.—Fort Worth 2008, pet. ref'd). Under this standard, the trial court's ruling will be upheld as long as it falls within the "zone of reasonable disagreement" and is correct under any theory of law applicable to the case. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); *Alami v. State*, 333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.). A trial court abuses its discretion only when its decision "was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (quoting *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993)); *Carter v. State*, 150 S.W.3d 230, 241 (Tex. App.—Texarkana 2004, no pet.).

Several courts have applied the abuse of discretion standard in reviewing trial courts' admission of evidence under the doctrine of forfeiture by wrongdoing. *See Thompson v. State*, No. 10-16-00238-CR, 2017 WL 3182988, at *1 (Tex. App.—Waco July 26, 2017, no pet.) (mem. op., not designated for publication); *see also Shepherd*, 489 S.W.3d at 572; *Tarley v. State*, 420 S.W.3d 204, 206 (Tex. App.—Houston [1st Dist.]

2013, pet. ref'd); *Garcia v. State*, No. 03-11-00403-CR, 2012 WL 3795447, *10–11 (Tex. App.—Austin Aug. 29, 2012, pet. ref'd) (mem. op., not designated for publication).

### 2. Scope of Review

In making its determination under article 38.49, the trial court considers "[e]vidence and statements related to a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of a witness or prospective witness." Tex. Code. Crim. Proc. Ann. art. 38.49(b). At the pre-trial hearing the court heard testimony from Investigator Couch and Appellant. In addition, the Voluntary Statement made by LE about the incident and evidence of Appellant's prior assault on LE were admitted.

### 3. The Evidence of Failed Service of Subpoena

As noted above, Investigator Couch and Appellant testified at the pre-trial hearing pursuant to article 38.49. Investigator Couch attempted to serve LE on March 21, 2018. He drove to the house and parked in front, knocked on the door, and when no one answered left his business card and left the premises. He then drove to a nearby middle school that he believed the children of the couple attended. He verified the children's address and returned to the couple's residence. He parked his car so he could observe the front of the home in a street that fed into the street of Appellant's residence. Exhibit 1[5] admitted at the pre-trial hearing reflects Appellant's

---

[5]Street names have been redacted from Exhibit 1.

12

residence (red dot in the picture below) and the street where Investigator Couch parked.



After about 10 to 15 minutes, Investigator Couch observed the garage door open, Appellant enter a Chevrolet Truck, back it out, and drive up parallel to Investigator Couch's car but going the opposite direction. Investigator Couch testified Appellant's truck was close enough that Investigator Couch could not exit the door of his car. Investigator Couch could not drive forward because there was a car parked in front of him, although he could have backed up. Appellant asked Investigator Couch if he could help him. Investigator Couch told him he wanted to speak to LE. Appellant understood Investigator Couch was there to serve a subpoena

13

and Appellant explained that LE did not want to go to court and they would have to arrest LE to get her to the trial. Appellant and Investigator Couch began to discuss the case and Investigator Couch saw the garage door open again, and LE emerged. She went to a parked car on the street in front of the house, entered it, and drove away. Investigator Couch told Appellant he wasn't going to chase LE because she might drive erratically and create more harm. Investigator Couch did not get out of his car or ask Appellant to move. A few minutes after LE left, Investigator Couch told Appellant he needed to leave, and Appellant moved his truck. Investigator Couch left and he never returned to the residence. Investigator Couch testified that based on the location of the truck and the conversation he had with Appellant, he felt Appellant was trying to keep him from serving LE. On cross-examination, Investigator Couch testified that he called the residence several times and no one answered the phone.

Appellant also testified at the pre-trial hearing. He stated that his wife is a homemaker who does not work and has not worked for quite some time. He provides all the financial support for his family. He has been with LE for 16 years and they have three minor children. Appellant testified that he told Investigator Couch that LE didn't want to testify or be served and that they might have to arrest her to get her to the courthouse. Appellant admitted the prior conviction but disputed the underlying facts of his previous assault conviction. At the pre-trial hearing, in addition to the testimony of Investigator Couch and Appellant, the trial court

admitted State's Exhibits 4 and 5 that included LE's statements concerning the incident and Appellant's criminal history including the prior assault conviction against LE.

### 4. *Evidence of the Parties' Relationship*

In addition to Appellant's role in the failure of service of the subpoena, the court also considered the parties' relationship. In *Giles*, Justice Scalia noted:

> Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions. Earlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help would be highly relevant to this inquiry, as would evidence of ongoing criminal proceedings at which the victim would have been expected to testify.

554 U.S. at 377, 128 S. Ct. at 2693.

Appellant had a previous assault bodily injury conviction stemming from an altercation with LE. Appellant testified that he told her about the subpoena and LE said she didn't have anything else to say to the court and she didn't want to come down to the courthouse for trial. He testified that LE was a homemaker and LE and their three children were financially dependent on him. At the time of the previous assault, the parties were living together, and according to Appellant, they continued to live together during the pre-trial hearing and trial. LE's Voluntary Statement about the incident was admitted at the pre-trial hearing.

There was sufficient evidence based on Appellants' actions in deterring service and the parties prior relationship to support the trial court's finding of forfeiture by

15

wrongdoing. Investigator Couch, an experienced investigator, testified that he believed Appellant was trying to keep him from serving LE. The trial court could infer that Appellant's failure to respond to Investigator Couch's knock on his door and calls to the house, and Appellant's conversation and location of his truck when LE exited the garage were intended to keep Investigator Couch from serving a subpoena on LE and to prevent LE from cooperating in the prosecution of the case. In addition, the trial court found the prior assault to be pertinent to Appellant's intention to prevent LE from testifying. LE and the minor children were financially dependent on Appellant, and despite repeated calls from Investigator Couch, LE never responded. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Based on our standard of review, we have no choice but to defer to the trial court's discretion on such issues, even if we would have decided them differently. *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). We hold that there was sufficient evidence to support the trial court's finding of forfeiture by wrongdoing by a preponderance of the evidence. We overrule Appellant's first issue.

### D. Issue 3: Forfeiture by Wrongdoing is Unconstitutional

In his third issue, Appellant argues that forfeiture by wrongdoing is facially unconstitutional because it prevents an accused from confronting his accusers. Appellant concedes that current case law is contrary to his position but argues that it

16

should be reversed. The State responds that Appellant failed to preserve a constitutional challenge to article 38.49, and furthermore, article 38.49 is not unconstitutional.

### 1. *Preservation*

In his Summary of Argument, Appellant states that he believes the "Forfeiture by Wrongdoing Statute in [article 38.49] is unconstitutional as it prevents Appellant from confronting his accusers." Although the statute is not mentioned again in the body of his argument, Appellant focuses on the denial of his constitutional right of confrontation. This is a facial challenge to the constitutionality of article 38.49.

At trial when the State sought to introduce LE's Voluntary Statement, Appellant objected based on his right of confrontation under the Texas and United States Constitutions. The court overruled the objection "based on our hearing that we have had previously." The court then granted Appellant a continuing objection on this basis through trial. The hearing referenced was the article 38.49 pre-trial hearing. Appellant preserved his facially unconstitutional claim in accordance with Rule 33.1(a) of the Texas Rules of Appellate Procedure.[6] Tex. R. App. P. 33.1(a).

---

[6] We note, however, that Appellant does not argue that article 38.49 is unconstitutional as applied to him.

17

### 2. *Constitutionality of Article 38.49*

Appellant carries the burden of establishing that article 38.49 is unconstitutional. *See Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978). When reviewing a statute, the appellate court must presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it. *Id.*; *see* Tex. Gov't. Code Ann. § 311.021 (West 2013) (stating that courts presume compliance with the Texas and United States Constitutions is intended). We must seek to interpret a statute so its constitutionality is supported and upheld. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1188 (2016).

Appellant presents a facial challenge to the constitutionality of article 38.49 by complaining that the forfeiture by wrongdoing forfeits his constitutional right to confrontation. *Id.* As Appellant concedes, the United States Supreme Court recognized the doctrine in the early case of *Reynolds*, which provides: "if a witness is absent by [the accused's] own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away." *Reynolds v. United States*, 98 U.S. 145, 158 (1878). Recent cases are in accord. *See Giles*, 554 U.S. at 359, 128 S. Ct. at 2683; *Davis*, 547 U.S. at 833, 126 S. Ct. at 2280. As acknowledged by Appellant, article 38.49 tracks the findings in *Giles*. *See Shepherd*, 489 S.W.3d at 574. We hold that article 38.49 is not unconstitutional, and we overrule Appellant's third issue.

18

## Conclusion

Having overruled Appellant's three issues, we affirm the trial court's judgment.

/s/ Rebecca Simmons

Rebecca Simmons
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 11, 2018